**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

Robert Carlton,

              Plaintiff,

v.

Union Pacific Railroad Co.,

              Defendant.

Case No. 8:23-cv-00211-BCB-SMB

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS**

## <u>INTRODUCTION</u>

Through its motion, Defendant Union Pacific distorts Plaintiff Robert Carlton's complaint, ignoring Carlton's well-pled allegations of disability discrimination while mounting attacks on claims Carlton has not actually asserted. Defendant's motion should be denied in its entirety. Carlton's disparate treatment claim under 42 U.S.C. § 12112(b)(6) is both viable and timely. Defendant's assertion that no such claim exists contradicts controlling Supreme Court precedent and the plain language of the statute and is nonsensical given the centrality of this claim to the now-decertified *Harris v. Union Pacific Railroad Co.* class action case and Eighth Circuit appeal regarding the same, from which this case arises. Further, accepting all allegations in Carlton's complaint as true and drawing all reasonable inferences in Carlton's favor, as is required at this juncture, Carlton has sufficiently alleged that he has a disability within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Defendant's attempts to prematurely limit Carlton's theory of disability to only one in which Union Pacific regarded Carlton as disabled should be rejected because Carlton also has plausibly alleged that he has an actual disability and record of disability. Finally, Carlton has not asserted disparate impact or

failure to accommodate claims, and therefore Defendant's arguments as to such claims should be disregarded.

## **RELEVANT FACTS**

### A.    **Union Pacific Removes Carlton from Service on the Basis of Disability.**

Carlton is a long-time employee of Union Pacific whom Union Pacific has placed on restricted and unpaid leave. (ECF No. 1, "Compl.," ¶¶ 29–30, 46–47, 53–56, 67.) Up until February 2016, Carlton worked as a Foreman General (Level I) in Oshkosh, Nebraska. (*Id.* ¶ 31.) On approximately February 13, 2016, Carlton had a seizure while at home in his sleep. (*Id.* ¶ 32.) Carlton sought medical treatment, and his treating doctors cleared him to return to work with temporary driving restrictions. (*Id.* ¶ 33.) Carlton reported this event to Union Pacific and was placed on a 6-month leave of absence. (*Id.* ¶ 34.) While on the leave of absence, Carlton had another seizure, during which he dislocated his shoulder. (*Id.* ¶ 35.) His shoulder became further damaged when doctors at the hospital relocated it, resulting in the need for surgery to repair his rotator cuff. (*Id.*) Following these seizures, Carlton's doctors prescribed anti-seizure medication, which Carlton continues to take. (*Id.* ¶ 36.) Carlton's neurologist cleared him to return to work without restrictions in approximately July 2016, and Carlton's medical providers treating his shoulder cleared him to return to work without restrictions in October 2016. (*Id.* ¶¶ 38, 42.)

Despite these clearances, Union Pacific subjected Carlton to a Fitness-for-Duty review. (*Id.* ¶¶ 34, 39, 43–45.) Union Pacific requested medical records pertaining to both Carlton's seizures and shoulder surgery, which he provided. (*Id.* ¶¶ 43–44.) Based on a file review, Dr. Matthew Hughes, one of Union Pacific's Associate Medical Directors, determined that Carlton was at risk for sudden incapacitation based on a "new onset seizure

disorder" and imposed work restrictions on Carlton. (*Id.* ¶¶ 45–46, 49–51.) Upon information and belief, in doing so, Union Pacific relied on guidance from the outdated FMCSA Medical Examiner Handbook and a "1% rule" that disqualifies from service any employee who Union Pacific suspects or believes may be at more than a 1% risk of sudden incapacitation. (*Id.* ¶¶ 12, 21–27, 48.) Dr. Hughes stated the restrictions could be reviewed in August 2026 or 10 years after discontinuation of anti-seizure medication. (*Id.* ¶ 47.) Union Pacific later noted these restrictions were permanent and notified Carlton that his supervisor was unable to accommodate the work restrictions it had imposed. (*Id.* ¶¶ 53–54.) As a result of the restrictions, Union Pacific did not permit Carlton to return to work, either in his previous position or a different position. (*Id.* ¶¶ 55–56.) At all relevant times, Carlton was an individual with a disability as defined by the ADA. (*Id.* ¶ 64.)

**B.      Carlton Was a Class Member in the Now-Decertified *Harris* Class Action and Asserts the Same Disparate Treatment Claims in this Individual Case.**

In February 2016, several Union Pacific employees commenced a class-action disability discrimination lawsuit against Union Pacific, titled *Quinton Harris et al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.). (Compl. ¶¶ 2, 58.) The lawsuit alleged that Union Pacific's Fitness-for-Duty policies and practices constituted a pattern or practice of discrimination under the ADA. (*Id.* ¶ 2.)

On February 19, 2016, the *Harris* named plaintiffs filed a first amended complaint, individually and on behalf of all those similarly situated. (ECF No. 8, Ex. A.) The first amended complaint asserted multiple claims, including disparate treatment claims under 42 U.S.C. §§ 12112(a) and (b)(6). (*See id.* ¶¶ 136-144.) On August 17, 2018, the *Harris* named plaintiffs moved to certify class allegations against Union Pacific for disparate treatment under 42 U.S.C. §§ 12112(a) and (b)(6). (ECF No. 8, Ex. B; Opperman Decl.,

Ex. 1 at 22–28.)[1] On February 5, 2019, District of Nebraska Judge Joseph Bataillon granted

the *Harris* named plaintiffs' motion for class certification. *See Harris v. Union Pacific*

*Railroad Company*, 329 F.R.D. 616 (D. Neb. Feb. 5, 2019).[2] Carlton was a victim of the

same discriminatory Fitness-for-Duty policies and practices alleged in *Harris*, and as a

result, was a class member in the previous *Harris* litigation. (Compl. ¶¶ 3, 59.) Consistent

with *Harris*, Carlton asserts disparate treatment claims under 42 U.S.C. §§ 12112(a) and

(b)(6) in his complaint. (*Id.* ¶¶ 62–75.)

## LEGAL STANDARD

In reviewing a motion dismiss for failure to state a claim under Rule 12(b)(6), a

court must accept as true all of the factual allegations in the complaint and draw all

reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792

(8th Cir. 2014) (citation omitted). The factual allegations need not be detailed, just

sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). In other words, a complaint need

---

[1] Matters outside the pleadings must not be considered in deciding a motion to dismiss under Fed. R. Civ. P. 12., but materials embraced by the complaint may be considered without converting the motion into one for summary judgment. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Materials embraced by the complaint include "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case[.]" *Id.* at 526 (citation omitted). The parties' briefing filed in the underlying *Harris* case falls within these categories of documents.

[2] The Eighth Circuit Court of Appeals ultimately reversed the certification decision in March 2020. *See Harris v. Union Pacific Railroad Co.*, 953 F.3d 1030 (8th Cir. 2020). Because Carlton was a class member in the *Harris* case, Carlton's disability discrimination claims have been subject to tolling during the pendency of litigating the class-wide claims, pursuant to the Supreme Court's ruling in *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983). (Compl. ¶ 59.) Accordingly, Carlton timely filed his disparate treatment claims. (*Id.* ¶ 61.) Defendant does not contest Carlton's status as a class member or the timeliness of his disparate treatment claims in the present motion. *See* ECF No. 7 at 3 n. 1.

only "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[T]he possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." *Jessie v. Potter*, 516 F.3d 709, n. 2 (8th Cir. 2008). The court may not consider matters that contradict the complaint or draw inferences from the record against the plaintiff. *See Papasan v. Allain*, 478 U.S. 265, 283 (1986); *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 955 (8th Cir. 2020). A motion to dismiss on the basis of a statute of limitations defense may only be granted if, after accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint "itself shows that the claim is time-barred." *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015).

## **ARGUMENT**

## I.   **CARLTON'S CLAIM UNDER 42 U.S.C. § 12112(B)(6) IS VIABLE AND TIMELY.**

In Count II of his complaint, Carlton asserts a disparate treatment claim under 42 U.S.C. § 12112(b)(6). (Compl. ¶¶ 70–75.) In this claim, Carlton asserts that Union Pacific discriminated against him by using qualification standards, employment tests, or other criteria as part of its Fitness-For-Duty program to intentionally screen him out of his job because of his disability. (*Id.* ¶¶ 9–27, 45–48, 71–73.) The Supreme Court has long recognized that disparate treatment and disparate impact claims are both cognizable under the ADA, and there is nothing in the statutory language preventing a plaintiff from asserting

a disparate treatment claim under 42 U.S.C. § 12112(b)(6). Despite these truths, Defendant argues that Carlton's § 12112(b)(6) claim may only be a disparate impact claim, and because the *Harris* plaintiffs sought to certify only their disparate treatment claim, Carlton's 12112(b)(6) claim must be dismissed for lack of timeliness. Defendant is wrong.

### A.   Carlton's § 12112(b)(6) disparate treatment claim is legally viable under Supreme Court precedent.

In *Raytheon Co. v. Hernandez*, the Supreme Court expressly held that "[b]oth disparate-treatment and disparate-impact claims are cognizable under the ADA." 540 U.S. 44, 53 (2003) (citing § 12112(b)(6) as an example); *see also Int'l Broth. of Teamsters v. U.S.*, 431 U.S. 324, 335 n. 15 (1977) ("Either theory may, of course, be applied to a particular set of facts."). Nowhere in the *Raytheon* decision did the Court hold, or even imply, that a claim under § 12112(b)(6) may only be one for disparate impact. *See* 540 U.S. at 44–55; *see also Chevron U.S.A, Inc. v. Echazabal*, 536 U.S. 73, 78 (2002) (recognizing that the qualification standards prohibited under § 12112(b)(6) are one of the types of "things an employer might do to block a disabled person from advancing in the workplace.")

Consistent with the Supreme Court's long-standing precedent, courts from this District and beyond have repeatedly affirmed that plaintiffs may assert a disparate treatment claim under § 12112(b)(6). *See, e.g.*, *Sanders v. Union Pacific R.R. Co.*, No. 4:20-cv-3023, 2021 WL 4783629, at *8 (D. Neb. Oct. 7, 2021) (recognizing that the plaintiff's disparate treatment claim under § 12112(b)(6) presented "direct evidence of discrimination[.]"); *see also E.E.O.C. v. Kronos Inc.*, 694 F.3d 351, 357 (3d Cir. 2012), *as amended* (Nov. 15, 2012) (recognizing that that the policies prohibited under § 12112(b)(6) "may be impermissible under both disparate treatment and disparate impact theories");

6

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988, 995, n. 10 (9th Cir. 2007) (en banc) (recognizing disparate treatment claim challenging a facially discriminatory policy under § 12112(b)(6)); *Leskovisek by next friend Stanley v. Illinois Dep't of Transportation*, 506 F. Supp. 3d 553, 568–69 (C.D. Ill. 2020) (holding that both disparate treatment and disparate impact claims are cognizable under § 12112(b)(6)); *Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC* ("*Dolgencorp, LLC* "), No. 2:17-CV-01649-MHH, 2022 WL 2959569, at *7–9 (N.D. Ala. July 26, 2022) (rejecting an argument by the defendant that a claim under § 12112(b)(6) pertains only to disparate impact claim); *Equal Emp. Opportunity Comm'n v. CTI, Inc.* ("*CTI, Inc.*"), No. CV-13-1279-TUC-DCB, 2015 WL 11120707, at *10–11 (D. Ariz. May 8, 2015) ("Where, as here, a policy actually screens out people with disabilities, it is disparate treatment and renders the statistical evidence unnecessary."); *Brasier v. Union Pacific R.R. Co.*, No. CV-21-00065-TUC-JGZ (MSA), 2023 WL 2754007, at *10 (D. Ariz. Mar. 31, 2023) (holding former *Harris* class member "alleged unlawful screening under either theory" of liability.)

As Defendant correctly points out, there is a distinction between a disparate treatment claim and a disparate impact claim. *See Int'l Broth. of Teamsters*, 431 U.S. at 335 n. 15. Where a plaintiff alleges that his employer used qualification standards, employment tests, or other criteria to **intentionally** screen him out of his job because of his disability, he alleges a disparate treatment claim. *See, e.g.*, *Dolgencorp, LLC*, 2022 WL 2959569, at *9 ("On its face, Dollar General's policy that screened out applicants whose corrected vision did not measure 20/50 or better in both eyes and whose blood pressure measured 160/100 or higher is direct evidence of intent to screen out certain job applicants based on medical qualifications standards or criteria."); *see also Bates*, 511 F.3d at 995

(finding hearing standard used by the employer was discriminatory because it "focused directly on an individual's disabling or potentially disabling condition."); *McGregor v. Nat'l R.R. Passenger Corp.,* 187 F.3d 1113, 1116 (9th Cir. 1999) (holding that a policy requiring employees to be "100% healed" or "fully healed" after an injury is facially discriminatory and constitutes a *per se* violation of the ADA).

On the other hand, where the plaintiff alleges that the company **<u>un</u>intentionally** discriminated against him by using facially-neutral qualification standards, employment tests, or other criteria that have the effect of screening out people with disabilities, it is a disparate impact claim. *See Raytheon*, 540 U.S. at 52; *see also Royal v. Missouri Highway & Transp. Comm'n*, 655 F.2d 159, 163 (8th Cir. 1981); *Gonzales v. City of New Braunfels, Tex.*, 176 F.3d 834, 839 (5th Cir. 1999).

Stated more clearly:

Qualification standards, employment tests, or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities may appear in a facially-neutral employment policy, **but employers also may adopt policies that expressly and intentionally screen out individuals with disabilities. In the latter category of screen out cases, the employment policy constitutes direct evidence of discriminatory intent**.

*Dolgencorp, LLC*, 2022 WL 2959569, at *7 (emphasis added).

Here, Carlton alleges that Union Pacific used its Fitness-for-Duty and reportable health events policies, including the "1% rule," to intentionally screen him out of his job because of his disability. Thus, his claim is one for disparate treatment, and his claim is specifically endorsed by the Supreme Court.

**B.      Carlton's § 12112(b)(6) disparate treatment claim is legally viable under the plain language of the statute.**

The plain language of § 12112(b)(6) also supports both disparate treatment and disparate impact claims. Section 12112(b)(6) prohibits "using qualification standards . . . that **screen out  or  tend  to  screen  out** an individual with a disability or a class of individuals with disabilities[.]" (emphasis added). Specifically, the "screen out or tend to screen out" dichotomy cements the existence of both types of claims and contemplates situations where plaintiffs may seek to prove their claims through a policy that is intended to discriminate ("screens out") or a facially neutral one with an adverse impact ("tends to screen out"). *See Dolgencorp, LLC*, 2022 WL 2959569, at * 7–8 (noting also that the plain language of § 12112(b)(6) "expressly authorizes not only class claims but also individual claims" which "bolsters this conclusion"); *cf.* § 12112(3)(A) (prohibiting discrimination by "utilizing standards, criteria, or methods of administration **that have the effect** of discrimination on the basis of disability") (emphasis added).

Interpreting § 12112(b)(6) to only permit claims for disparate impact renders the "screen out" language meaningless. However, "[s]tatutes are to be interpreted as a whole . . . ." *Cody v. Hillard*, 304 F.3d 767, 776 (8th Cir. 2002). Courts must not interpret "one provision 'in a manner that renders other sections of the same statute inconsistent, meaningless, or superfluous.'" *Id.* (*quoting United States v. Fiorillo*, 186 F.3d 1136, 1153 (9th Cir. 1999)). In addition, the court should "give effect, if possible, to every clause and word of a statute." *Moskal v. United States*, 498 U.S. 103, 104, 111 S. Ct. 461, 462 (1990). When "the language of a statute is unambiguous[,]" as is the case with § 12112(b)(6), "the statute should be enforced as written unless there is clear legislative intent to the contrary." *United States v. White Plume*, 447 F.3d 1067, 1072 (8th Cir. 2006).

9

C.      **During *Harris*, Union Pacific and the Eighth Circuit acknowledged the viability of the plaintiffs' § 12112(b)(6) disparate treatment claim.**

During the underlying *Harris* class litigation, both Union Pacific and the Eighth Circuit acknowledged the viability of the *Harris* plaintiffs' disparate treatment screening claim under § 12112(b)(6). In *Harris*, the plaintiffs sought certification of only their disparate treatment claims under 42 U.S.C. §§ 12111(a) and (b)(6), which the district court granted. (*See* Opperman Decl., Ex. 1 at 22–28.) On appeal of the district court's class certification order, Union Pacific cited to §12112(b)(6) six times in its opening brief and thirteen times in its reply—without once arguing the provision applied only to disparate impact claims. (*See* Opperman Decl., Exs. 2 and 3.) Instead, Union Pacific argued (b)(6) was part of the *Harris* class members' disparate treatment claims because a "defendant can defeat a finding of ADA liability by showing that its decision was justified by business necessity, 42 U.S.C. § 12112(b)(6)[,]" and that class certification had "deprived" Union Pacific "of its right to argue that a particular employment action was justified by 'business necessity,' 42 U.S.C. § 12112(b)(6)." (Opperman Decl., Ex. 2 at 20–21, 28–29, 46.)

In granting Union Pacific's appeal, the Eighth Circuit also acknowledged the viability of the *Harris* plaintiffs' disparate treatment claim under § 12112(b)(6). In its decision, the Eighth Circuit cited to § 12112(b)(6) on ten separate occasions. *See Harris v. Union Pacific R.R. Co.*, 953 F.3d 1030 (8th Cir. 2020). The Eighth Circuit reasoned that section 12112(b)(6) was an essential component of the disparate treatment claims of all class members because a district court could not "determine whether the 'policy itself' constituted a pattern or practice of unlawful discrimination without considering whether the policy is job-related[.]" *See id.* at 1034–35 (*citing* § 12112(b)(6)). The court never stated that the plaintiffs' claim under § 12112(b)(6) was only one for disparate impact. *See*

10

*id.* at 1032–39. This omission is especially significant given that the *Harris* plaintiffs had only sought to certify their disparate treatment claim and that the sole focus of the appeal was the propriety of certification as to that claim.

**D.      Post-*Harris*, Union Pacific has altered its position to claim that former *Harris* plaintiffs' § 12112(b)(6) claims are untimely.**

Following the Eighth Circuit's decision, Union Pacific has altered its position, now claiming that any claim under § 12112(b)(6) is only one for disparate impact, and because the *Harris* plaintiffs sought to certify only their disparate treatment claim, any screening claim brought by a former *Harris* class member, like Carlton, is suddenly untimely. The cases Defendant cites, however, fail to support its novel legal theory.

For example, Defendant cites to the Eighth Circuit's decision in *Boersig v. Union Elec. Co.*, 219 F.3d 816 (8th Cir. 2000), claiming that it proves § 12112(b)(6) "invoke[es] a disparate-impact theory of ADA liability. (ECF No. 7 at 7.) The facts of *Boersig* prove otherwise. In *Boersig*, the plaintiff alleged that the employer's collectively-bargained seniority system—a facially neutral policy—had "the effect of discriminating against him because of his disability without any sound business justification." *Id.* at 822. The plaintiff made no claim for disparate treatment and did not argue that the employer used the policy with the intent to screen out people with disabilities. *See id.* Accordingly, the Eighth Circuit expressed no opinion about whether such a treatment claim is viable under the statute. *See id.*

Defendant also relies on erroneous statements or reasoning from district court decisions from other jurisdictions. For example, Defendant cites a district court decision in *Equal Employment Opportunity Commission v. BNSF Railway Company*, 2016 WL 98510, at *5 (W.D. Wash. Jan. 8, 2016), which reported that "no Ninth Circuit case" had applied

11

or considered unlawful screening under § 12112(b)(6) as a disparate treatment claim. (ECF No. 7 at 7.) In fact, years prior, sitting en banc, the Ninth Circuit directly addressed the issue in *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007). There, the Ninth Circuit held that the hearing standard used by the employer was a "facially discriminatory qualification standard [under § 12112(b)(6)] because it focuse[d] directly on an individual's disabling or potentially disabling condition." *Id.*

Defendant also cites a wrongly decided and unpublished case from Texas. *See Fulbright v. Union Pacific R.R. Co.*, No. 3:20-cv-2392-BK, 2022 WL 625082 (N.D. Tex. Mar. 2, 2022). (ECF No. 7 at 8.) The court in *Fulbright* held that the plaintiff could not bring a disparate treatment claim under § 12112(b)(6). 2022 WL 625082, at *2-3. At the same time, the court also concluded that Union Pacific's removal of the plaintiff, another *Harris* class member, was the result of Union Pacific's "facially discriminatory qualification standards," as the company focused directly on the individual's disabling or potentially disabling condition. *Id.* at *3 (*quoting Bates*, 511 F.3d at 988). In reaching its decision, the court cited the Ninth Circuit's en banc decision in *Bates*. *Id.* Yet in *Bates*, as discussed above, the Ninth Circuit specifically endorsed a disparate treatment claim under § 12112(b)(6). *Bates*, 511 F. 3d at 988 (finding the defendant's facially discriminatory policy constituted disparate treatment.)

Finally, Defendant points to this Court's dicta in *Meza v. Union Pacific R.R. Co.*, No. 8:22-cv-102, 2022 WL 4131359 (D. Neb. Sept. 12, 2022). (ECF No. 7 at 8–9.) However, this Court did not decide the issue in *Meza*, and, for the reasons explained herein, disparate treatment claims are legally viable under § 12112(b)(6). Supreme Court precedent, the plain language of the statute, and the obvious import of the Eighth Circuit's

reasoning in *Harris v. Union Pacific* make this clear. As such, Defendant's motion should be denied.

> **E.    Carlton has pled a viable disparate treatment claim under § 12112(b)(6).**

Recognizing the frailty of its attempts to reconstruct Carlton's § 12112(b)(6) timely disparate treatment claim as a purportedly untimely disparate impact claim, Defendant alternatively attacks Carlton's pleading, claiming that to establish his disparate treatment claim under § 12112(b)(6), Carlton must prove that Union Pacific's policies are "facially discriminatory," and that he fails to plead sufficient facts to support such a claim. (*See* ECF No. 7 at 9–12.) In support, Defendant highlights a single paragraph in Carlton's complaint, and argues, based on this single paragraph, that this Court should find, as a matter of law and before any discovery is conducted on the alleged policies, that Union Pacific's Fitness-for-Duty policies are not facially discriminatory. (*See id.* at 11 (*citing* Compl. ¶ 17[3]).)

Defendant's argument, however, contradicts the applicable standard on a motion to dismiss. Under this standard, the Court must accept as true **all** the factual allegations in the complaint and must draw **all** reasonable inferences from the record in favor of the plaintiff. *Gorog*, 760 F.3d at 792; *see also Papasan,* 478 U.S. at 283; *Nelson Auto Ctr., Inc.*, 951 F.3d at 955. The Court may not, as Defendant urges, disregard the entirety of Carlton's complaint in favor of one paragraph, and then interpret that paragraph as Defendant suggests. *Id.*

What is more, contrary to Defendant's contention, there is no requirement that Carlton prove the alleged policies are "facially discriminatory." Rather, the question for

---

[3] The language Defendant quotes comes from paragraph 17 of Carlton's complaint, not paragraph 23.

Carlton's claim under § 12112(b)(6) is whether the evidence in the complaint, when accepted as true, is sufficient to state a plausible claim that Union Pacific was using its Fitness-for-Duty policies to **intentionally** screen him out of his job because of his disability. *See Raytheon*, 540 U.S. at 52; *see also Bates*, 511 F.3d at 995; *Dolgencorp, LLC*, 2022 WL 2959569, at *7-9; *Leskovisek*, 506 F. Supp. 3d at 568-69; *Sanders*, 2021 WL 4783629, at *7-9; *CTI, Inc.,* 2015 WL 11120707, at *7-10; *Braiser*, 2023 WL 2754007, at *10; *McGregor*, 187 F. 3d at 1116.

Carlton may establish this "disparate treatment either (1) by direct evidence that [the] workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in *McDonnell Douglas*." *Young v. United Parcel Service, Inc.*, 575 U.S. 206, 212–13 (2015). As such, proving that Union Pacific's policies are facially discriminatory because they expressly rely on his disability is sufficient to prove his claim, but not required. *See id.* Carlton may also prove his claim with indirect evidence sufficient to show that Union Pacific was using its Fitness-for-Duty policies to intentionally screen him out of his job because of his disability. *See id.*

Here, Carlton raises a plausible claim with both direct and indirect evidence. Carlton alleges that Union Pacific discriminated against him "on the basis of disability by using facially discriminatory qualification standards, employment tests, and/or other selection criteria, as part of its Fitness-For-Duty program and related policies, that are **intended to screen out individuals with disabilities**, and which did screen out Carlton." (*Id.* ¶ 72) (emphasis added). Specifically, Carlton alleges that under the direction of Dr. John Holland, Union Pacific adopted and utilized "standardized protocols for employees with certain broad categories of health conditions or treatments" and "assign[ed]

14

standardized work restrictions to employees[]" when the company learned that the employee "may have, or may have had in the past," one of the prohibited medical conditions. (Compl. ¶¶ 11, 20, 28, 71–73.) Defendant focuses its attention on the Medical Rules, but Carlton expressly alleges that Union Pacific also "maintains other unlawful policies and qualification standards related to Fitness-for-Duty that are not included within the Medical Rules." (*Id.* ¶ 12.) One such facially discriminatory policy utilized by Union Pacific to screen out employees based on their medical conditions, and which, upon information and belief, did screen out Carlton, was its "1% rule," which it used to disqualify from service any employee who it believed had epilepsy, seizures, or a seizure risk, on the basis that they posed a greater than 1% risk for sudden incapacitation. (*Id.* ¶¶ 11–12, 18–19, 27, 43–57.) These policies were neither job-related nor consistent with business necessity. (*Id.* ¶ 73.) And as a direct result of the policies, Union Pacific removed employees from their jobs on account of their medical conditions, regardless of whether such conditions actually interfered with the employees' ability to perform the essential functions of their position. (*Id.* ¶ 28.)

Carlton also presents indirect evidence sufficient to state a plausible claim. Carlton alleges that, in carrying out its policies, Union Pacific never examined the employee, never spoke to the employer's treating physicians, and ignored the opinions of treating physicians who cleared the employees to return to work without restrictions. (*Id.* ¶ 15–16, 32–57.) Moreover, Carlton alleges that Union Pacific relied on the Federal Motor Carrier Safety Administration ("FMCSA") 2014 Medical Examiner's Handbook to determine which health conditions required work restrictions, which standard restrictions to impose, and how long those restrictions should remain in place. (*Id.* ¶¶ 21, 48.) Not only was the

15

FMCSA Handbook inapplicable to railroad workers, Union Pacific continued to rely on it even after the FMCSA withdrew the Handbook from the FMCSA website and no longer endorsed its use. (*Id.* ¶¶ 22–27.) From these alleged circumstances—namely, the lack of an individualized Fitness-for-Duty evaluation, Union Pacific's disregard of the opinions of Carlton's treating medical providers, and Union Pacific's continued reliance on a flawed handbook—it is reasonable to infer that Union Pacific intentionally discriminated against Carlton. Accordingly, viewing this evidence in Carlton's favor, his allegations state a plausible claim for disparate treatment under § 12112(b)(6). *See e.g.*, *Sanders,* 2021 WL 4783629, at *7-9; *see also Brasier,* 2023 WL 2754007, at *11-16; *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 863 (9th Cir. 2009); *Monette v. Electronic Data Systems, Corp.*, 90 F.3d 1173, 1180-84 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012); *Dolgencorp, LLC*, 2022 WL 2959569, at *9; *Bates*, 511 F.3d at 995. Defendant's motion should be denied.[4]

## II.   CARLTON HAS ALLEGED AN "ACTUAL" AND "RECORD OF" DISABILITY WITHIN THE MEANING OF THE ADA.

An individual has a "disability" under the ADA if they have: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record

---

[4] As noted above, *supra* n. 2, Defendant does not contest the timeliness of Carlton's disparate treatment claim under § 12112(b)(6) in its motion. But, even if it had, any such argument would fail. Carlton's complaint clearly alleges that he was a class member in the previous *Harris* litigation, and he pleads the same disparate treatment claims for which the plaintiffs in *Harris* sought class certification. (Compl. ¶¶ 3, 59, 62–75; Opperman Decl., Ex. 1 at 22–28.) Under the principles of *American Pipe* and *Crown, Cork*, Carlton's disparate treatment claim under § 12112(b)(6) was undoubtedly tolled. (*See id.* ¶¶ 59, 61.) Carlton timely filed a charge of discrimination with the EEOC on April 10, 2020, and timely initiated this lawsuit upon receipt of a right-to-sue letter from the EEOC. (*Id.* ¶ 61.)

of such an impairment; or (3) are regarded as having such an impairment. 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1). "An individual may establish coverage under any one or more of these three prongs of the definition of disability[.]" 29 C.F.R. § 1630.2(g)(2). A plaintiff is not required to plead facts sufficient to establish a prima facie ADA claim in his complaint to survive dismissal; rather, "[t]he elements of a successful ADA claim" are simply "part of the background against which a plausibility determination should be made." *Cook v. George's, Inc.*, 952 F.3d 935, 938–39 (8th Cir. 2020) (citation and internal quotation marks omitted).

Defendant challenges the sufficiency of Carlton's complaint as to prongs (1) and (2). However, Defendant's contention that Carlton has not pled an "actual" or "record of" disability ignores the breadth of the ADA's definition of disability and the reasonable inferences that must be drawn from Carlton's complaint.

The ADAAA amendments in 2008 provided for an "intentionally more liberal definition of 'disability.'" *Sanders*, 2021 WL 4783629, at *8 (citing *Smothers v. Solvay Chem., Inc.*, 740 F.3d 530, 545 n.16 (10th Cir. 2014) ("The [ADAAA] created a broader definition of disability to protect more individuals, by, *inter alia*, expanding what is considered a major life activity and directing courts to interpret 'substantial limitation' broadly in favor of coverage")). Courts must construe the ADA's definition of disability "in favor of broad coverage of individuals . . . to the maximum extent permitted" by its terms. 42 U.S.C. § 12102(4)(A); *see* 29 C.F.R. § 1630.2(i)(2) ("In determining other examples of major life activities, the term 'major' shall not be interpreted strictly to create a demanding standard for disability."); 29 C.F.R. § 1630.2(j)(1)(i), (iii) (instructing that the term "substantially limits" be construed "to the maximum extent permitted by the terms of

17

the ADA" as it is "not meant to be a demanding standard"); 29 C.F.R. § 1630.2(k)(2) (stating record of impairment "shall be construed broadly to the maximum extent permitted by the ADA and should not demand extensive analysis.").

Current ADA regulations define a physical or mental impairment to include "any physiological disorder or condition . . . affecting one or more body systems, such as neurological [and] musculoskeletal[.]" 29 C.F.R. § 1630.2(h)(1). An impairment is a disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* § 1630.2(j)(i)(ii). A person has a record of a disability if the person "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Id.* § 1630.2(k)(1); *see Harrell v. Dolgencorp, LLC*, No. 13-cv-5038, 2013 WL 12138592, at *4 (W.D. Ark. July 12, 2013) (finding allegations that the plaintiff "had been diagnosed with and prescribed medication for her disorder" indicative of a record of disability). For purposes of the ADA's definition of disability, major life activities include not only activities such as performing manual tasks, sleeping, walking, and working, they also include "the operation of a major bodily function, including but not limited to . . . neurological, brain, . . . [and] musculoskeletal" functions. 42 U.S.C. § 12102(2)(A), (B); 29 C.F.R. § 1630.2(i). "An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." 42 U.S.C. § 12102(4)(C); 29 C.F.R. § 1630.2(j)(1)(viii). Moreover, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(j)(1)(vii). "The determination of whether an impairment substantially limits a major life activity shall be made without

regard to the ameliorative effects of mitigating measures such as medication." 42 U.S.C. § 12102(4)(E)(i)(I); 29 C.F.R. § 1630.2(j)(1)(vi).

Under these standards, Carlton has plausibly alleged that he has an "actual" disability and "record of" disability. Not only must this Court accept all of Carlton's allegations as true and draw all reasonable inferences in his favor, this Court also must follow the ADA's directive to construe the statute as broadly as possible in favor of coverage. Carlton alleges more than just that he is "an individual with a disability as defined by the ADA." (Compl. ¶ 64.) Carlton also alleges that he experienced two seizures and a resulting rotator cuff injury, for which he sought medical treatment. (*Id.* ¶¶ 32–33, 35.) Carlton submitted medical records pertaining to both his seizures and shoulder surgery to Union Pacific. (*Id.* ¶ 44.) According to Dr. Hughes, Carlton's medical records showed a "new onset seizure disorder." (*Id.* ¶ 45.) It is reasonable to infer that these physiological disorders or conditions constituted physical impairments within the meaning of the ADA and that there is a record of these impairments. Carlton further alleges that he was given temporary driving restrictions after his first seizure and was prescribed anti-seizure medication following his second seizure, which he has continued to take since 2016. (*Id.* ¶¶ 33, 36.) Carlton's anti-seizure medication is a mitigating measure, and its ameliorative effects are not to be considered. It is reasonable to infer from Carlton's continued use of anti-seizure medication prescribed by a doctor that, without such medication, Carlton's alleged seizure disorder would substantially limit at least one major life activity, *e.g.*, the operation of his neurological function. In total, these allegations are sufficient to overcome Defendant's motion. Should the Court disagree, Carlton requests that the Court permit him to amend his complaint with respect to his allegations of disability.

19

III. **CARLTON DOES NOT ASSERT AN INDEPENDANT FAILURE-TO-ACCOMMODATE CLAIM, BUT ACOMMODATIONS REMAIN RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES.**

Defendant's motion to dismiss an independent failure-to-accommodate claim is unnecessary and should be denied because Carlton asserts no such claim. While it is true that Carlton's complaint contains a number of allegations pertaining to accommodations, Carlton includes these allegations because they are relevant to other claims and defenses asserted by the parties.

In particular, to ultimately prevail on a discrimination claim under the ADA, a plaintiff must show that he has a disability within the meaning of the ADA, that he was a qualified individual under the ADA, and that he suffered an adverse employment action due to his disability. *See Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 631 (8th Cir. 2016); *see also Sanders v. Union Pacific R.R. Co.,* No. 4:20-CV-3023, 2022 WL 3446189, at *2 (D. Neb. Aug. 17, 2022). A qualified individual under the ADA is an "individual who, *with or without a reasonable accommodation*, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added); *Sanders*, 2022 WL 3446189, at *2. Failure to provide or consider available accommodations can also support a finding of intentional discrimination, as it may raise an inference that an employer's claimed rationale is pretext for discrimination. *See Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 854 (8th Cir. 2012) (A "plaintiff may prove pretext by adducing enough admissible evidence to raise genuine doubt as to the legitimacy of [the defendant's] motive.") (internal quotation marks omitted).

Accommodations are also relevant to a defendant's direct threat affirmative defense, as a defendant must show that its employee was a "significant risk to the health

and safety of others that cannot be eliminated by *reasonable accommodation*." 42 U.S.C. § 12111(3); 29 C.F.R. § 1630.2(r) (emphasis added). Reasonable accommodations must be made for otherwise qualified individuals who are actually disabled or have a record of impairment. 29 C.F.R. § 1630.2(o)(4); *see* 42 U.S.C. § 12111(9) (listing examples of accommodations).

To the extent Defendant may assert later in this litigation that evidence of accommodations is irrelevant or not discoverable because Carlton has not asserted a standalone failure-to-accommodate claim, any such argument should be rejected. That position finds no support in the law. There is no requirement in the ADA's statutory and regulatory language, the Eighth Circuit's Model Jury Instructions, or binding caselaw that a plaintiff must have a separate failure-to-accommodate claim for accommodations to be relevant to the question of whether a plaintiff is qualified or poses a direct threat. *See* 42 U.S.C. § 12101, *et seq*.; 29 C.F.R. § 1630.1, *et seq*.; Eighth Circuit Model Jury Instructions 9.01-9.62; *see also Meza v. Union Pacific R.R. Co.*, No. 8:22-cv-00102-RFR-SMB (June 28, 2023), ECF No. 109 (permitting accommodations-related discovery absent a standalone claim). In short, although Carlton has not asserted an independent failure-to-accommodate claim in this action, his allegations regarding accommodations are nonetheless relevant.

## CONCLUSION

Defendant's motion ignores applicable law and is untethered from the actual claims Carlton has asserted. Carlton has alleged both a viable disparate treatment claim under § 12112(b)(6) and an "actual" and "record of" disability within the meaning of the ADA. For all of the reasons stated above, Defendant's motion should be denied.

Date: July 6, 2023                    **NICHOLS KASTER, PLLP**

                                     s/Caitlin L. Opperman
                                     James H. Kaster* (MN # 53946)
                                           kaster@nka.com
                                     Lucas J. Kaster* (MN # 396251)
                                           lkaster@nka.com
                                     Caitlin L. Opperman* (MN # 0399978)
                                           copperman@nka.com
                                     80 South Eighth Street
                                     4700 IDS Center
                                     Minneapolis, Minnesota 55402-2242
                                     Telephone: (612) 256-3200
                                     Fax: (612) 338-4878

                                     *Admitted in D. Neb.

                                     **ATTORNEYS FOR PLAINTIFF**


## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with NECiv.7.1(d) and further certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word and contains 6,400 words.

Dated: July 6, 2023                    s/Caitlin L. Opperman
                                      Caitlin L. Opperman

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF systems, and such filing was sent electronically using the CM/ECF system to all parties for whom counsel has entered an appearance.

Dated: July 6, 2023                                    <u>s/Caitlin L. Opperman</u>
                                                             Caitlin L. Opperman