IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ROBERT CARLTON,

        Plaintiff,

vs.

UNION PACIFIC RAILROAD CO.,

        Defendant.

**8:23CV211**

**ORDER**

This matter comes before the court on Plaintiff's Motion to Exclude Dr. John Holland as an expert witness (Filing No. 75) and Plaintiff's Motion to Strike Dr. Holland's Declaration. (Filing No. 91). The matter was referred to the undersigned magistrate judge pursuant to 28 U.S.C. §636(b)(1)(A). For the following reasons, the court grants both motions in part and denies them in part. The court concludes that portions of Dr. Holland's testimony consists of expert opinions under Fed. R. Evid. 702 that were not properly and timely disclosed and should be excluded, nor should they be considered for purposes of summary judgment. Dr. Holland's testimony will accordingly be limited to factual matters that may be within his personal knowledge and which were properly disclosed.

## I.    BACKGROUND

Plaintiff worked as a Foreman General with Defendant Union Pacific in 2016 when he had a seizure while at home in his sleep. (Filing No. 1, at para. 32). He reported the seizure to his supervisor and was instructed to take a six-month leave of absence. (Filing No. 1, at para. 34). Approximately two months later, Plaintiff experienced another seizure,

which also caused a shoulder injury that required surgical repair. (Filing No. 1, at para. 35). After these incidents, Plaintiff's physicians prescribed anti-seizure medication, which he continues to take. He was subsequently treated, fully recovered, and his physicians cleared him to return to work without restrictions in July 2016. (Filing No. 1, at para. 38). Despite those clearances, Defendant initiated its Fitness-for-Duty ("FFD") evaluation process, which assesses whether employees are medically or functionally able to perform their job duties. The FFD process typically involves a review of medical records and, if necessary, an evaluation to determine whether work restrictions are necessary pursuant to Union Pacific's medical guidance and policies. (Filing No. 1-1).

Based upon that process, Union Pacific's Associate Medical Director Dr. Matthew Hughes reviewed Plaintiff's medical records and noted that Plaintiff was "evaluated for return to work clearance for rotator cuff repair when he was discovered to have a new onset seizure disorder." (Filing No. 1, at para. 45) (internal quotations omitted). Dr. Hughes then placed Plaintiff on sudden incapacitation restrictions until August 2026, or ten years after Plaintiff discontinued use of his anti-seizure medication. (Filing No. 1, at para. 46-47, Filing No. 77-16, 7:13-8:7). Several months later, Defendant designated Plaintiff's restrictions as permanent. (Filing No. 1, at Filing No. 53). Plaintiff was unable to return to work in his prior position as a result of those restrictions or any other safety-sensitive position he applied for with Defendant. He subsequently filed suit on May 23, 2023, alleging violations of the Americans with Disabilities Act ("ADA") for disability discrimination and disparate treatment.[1]

The court entered a Final Progression Order on November 16, 2023, which set a number of important progression deadlines, including serving initial mandatory disclosures under Rule 26(a)(1), completing written discovery and depositions, and providing for expert witness disclosures. (Filing No. 23). The deadline set for Plaintiff's complete expert disclosures was May 28, 2024, and the deadline set for Defendant's was June 27, 2024.

---

[1] Count II: Disparate Treatment was dismissed by the district court on September 29, 2023. (Filing No. 18).

Neither party formally moved to extend these deadlines, however the parties appear to have privately agreed to a two-week extension. (Filing No. 77, at para. 4).

Defendant served its Rule 26 Disclosures on or about November 16, 2023, and listed Dr. John Holland as a witness who "may have knowledge concerning Union Pacific's fitness for duty policies and procedures, his review of Plaintiff's medical records and information, Plaintiff's health condition, and his involvement in Plaintiff's FFD review as set forth in the Medical Comments History, and the restrictions applicable to Plaintiff." (Filing No. 77-1, at p. 2). Dr. Holland was Defendant's Chief Medical Officer at the time of Plaintiff's seizures and responsible for developing the FFD policies that applied to Plaintiff, however he did not participate in Plaintiff's individual FFD determination. (Filing No. 77-16, at 8:9-9:6). On June 27, 2024, Defendant served its expert disclosures, but did not name Dr. Holland as either a retained or non-retained expert. (Filing No. 77-3). As a result, Defendant did not provide any expert report or expert opinions of Dr. Holland with those disclosures.

In September 2024, Plaintiff began making efforts to schedule Dr. Holland's deposition. (Filing No. 77-1, Filing No. 77-5, Filing No. 77-6). However, due to scheduling conflicts and change in defense counsel, his deposition was not scheduled until September 23, 2025. (Filing No. 77-11). On September 22, 2025, the day before the scheduled deposition, Defendant produced a 14-page "Declaration of Dr. Holland" with approximately 628 pages of attached exhibits, which Plaintiff alleges were not previously disclose in discovery. (Filing No. 77-13, Filing No. 77-14, Filing No. 77-15). When pressed on the justification of this late disclosure, given Plaintiff's belief that the declaration contained expert opinions, Defendant explained that Rule 26(a)(3) disclosures are not due until 30 days before trial. Defendant further stated that because Dr. Holland reviewed the attached exhibits to prepare for his deposition, they were provided as a courtesy so Plaintiff could have the opportunity to depose Dr. Holland as it related to his anticipated trial testimony. (Filing No. 77-12). Dr. Holland was deposed as scheduled on September 23, 2025. (Filing No. 77-15).

3

Immediately following the deposition, Plaintiff's counsel contacted the court seeking informal guidance on how to move forward with Dr. Holland's testimony. (Filing No. 69-4). The matter was set for a discovery dispute conference, which was held on the record on October 1, 2025. (Filing No. 67, Filing No. 68). Plaintiff argued Dr. Holland's declaration was untimely because written discovery had closed and it contained expert opinions, despite Dr. Holland never being identified as an expert witness. Defendant responded that they are not offering any expert opinions from Dr. Holland, but rather solely seeking fact testimony regarding his role in developing the fitness for duty policies and the justification underlying those policies. The court noted after review that Dr. Holland's declaration likely contained expert opinions under Fed. R. Evid. 702, but would have to further evaluate whether the disclosure was an unfair surprise that prejudiced Plaintiff. The undersigned did not make a ruling at that time, but encouraged the parties to continue to meet and confer in good faith to come to a resolution and authorized the parties to file an appropriate motion to exclude if no resolution was reached. (Filing No. 67). Plaintiff thereafter filed his Motion to Exclude Dr. Holland as an untimely disclosed expert witness. (Filing No. 75).[2]

On the same day this motion was filed, Defendant also filed a Motion for Summary Judgment and included an Amended Declaration of Dr. Holland with its index of evidence supporting the motion, which is similar to his original declaration, but contains substantive changes. (Filing No. 78, Filing No. 81-2).[3] Based upon the same arguments, Plaintiff moves to strike Dr. Holland's Amended Declaration from the summary judgment materials. (Filing No. 91).

---

[2] Plaintiff filed also filed a Motion to Exclude Dr. Holland in 8:23-cv-267 *King v. Union Pacific*. The parties' briefing and arguments are nearly identical in both cases, aside from factual differences relating to the plaintiff. As the court intends to rule on these motions simultaneously, the legal standard and analysis will largely be the same.

[3] Dr. Holland's Amended Declaration (Filing No. 81-2) is nearly identical to his Amended Declaration in *King v. Union Pacific* (8:23-cv-267, at Filing No. 77-4), apart from Paragraphs 25 and 26. In those paragraphs, Dr. Holland provided information about epilepsy guidance and seizure standards, as opposed to stroke guidance discussed in *King*.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(a) requires litigants to disclose information about their witnesses. Fed. R. Civ. P. 26(a)(2) sets disclosure requirements for expert witnesses. The rule distinguishes between "a witness who is…retained or specially employed to provide expert testimony in a case" and fact witnesses with personal knowledge of the case who possess expert knowledge. Fed. R. Civ. P. 26(a)(2). Witnesses presenting expert testimony must be specifically identified as witnesses presenting expert testimony—not as fact witnesses under Rule 26(a). "Disclosing a person as a witness and disclosing a person as an expert witness are two distinct acts." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004). "For a witness retained or otherwise engaged to provide expert testimony in litigation," Rule 26(a)(2)(B) requires the witness to provide a written report, "signed by the witness, providing prescribed, detailed information." *See Johnson v. Friesen*, 79 F.4th 939, 943 (8th Cir. 2023).

For experts who are not required to provide written reports, Rule 26(a)(2)(C) requires a "considerably less extensive" summary disclosure of the opinions to be offered. *Id.* (*citing* Rule 26 advisory committee note to 2010 amendment). This second category of "hybrid witnesses" need only disclose "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)-(D). "Although the information required under Fed. R. Civ. P. 26(a)(2)(C) is less extensive than an expert report under 26(a)(2)(B) ...the two forms of disclosure share the goal of increasing efficiency and reducing unfair surprise." *Brown v. Providence Med. Ctr.*, 2011 WL 4498824, at *1 (D. Neb. Sept. 27, 2011) (internal quotation marks omitted). Further, the deadlines for these disclosures are set by the court and must be followed. *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*, 187 F.R.D. 578, 582 (D. Minn. 1999) (A magistrate judge's scheduling order '"is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril").

"The disclosure mandates [of] Rule 26 are given teeth by the threat of sanctions in Rule 37." *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). When a party does not fully comply with the expert-disclosure rules, "the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). The Court's discretion is guided by "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id.* (*citing Sellers v. Mineta*, 350 F.3d 706, 711-12 (8th Cir. 2003)). "[E]xclusion of evidence is a harsh penalty and should be used sparingly." *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 645 (8th Cir. 2022).

### III.    ANALYSIS

**A. <u>Motion to Exclude</u>**

*1. Dr. Holland's Opinions Were Not Timely Disclosed*

The deadline for expert witness disclosures in this case has long expired, so the court must first determine whether Dr. Holland was properly and timely disclosed as a fact witness, or if he is an expert witness under the heightened disclosure requirements of Rule 26. As the Eighth Circuit explained, "[d]etermining whether a witness is offering an expert or lay opinion requires a case-by-case analysis of both the witness and the witness's opinion." *United States v. STABL, Inc.*, 800 F.3d 476, 486 (8th Cir. 2015). On this point, the court concludes that Dr. Holland should have been disclosed, at a minimum, as a non-retained expert witness. After reviewing Dr. Holland's Declaration, the court concludes that several portions cross the line from factual narrative into medical and technical knowledge within the scope of Rule 702.

6

Rule 701 permits lay opinion testimony only if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The rule allows a lay witness to draw common sense inferences from firsthand knowledge and to recount "relevant historical or narrative facts that the witness has perceived" when helpful to the factfinder. United States v. Oliver, 908 F.2d 260, 263 (8th Cir. 1990) (citations omitted). But Rule 701 draws a firm line. It "generally does 'not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness.'" United States for Use of Donald B. Murphy Contrs. v. Travelers Cas. & Sur. Co., 2017 WL 2838128, at *2 (D. Neb. June 30, 2017) (quoting Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 203 (4th Cir. 2000)). The 2000 amendment to Rule 701 reinforces this limitation by seeking to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 (Notes of Advisory Committee on 2000 Amendment). A witness provides expert testimony whenever he offers opinions based on "scientific, technical, or other specialized knowledge," regardless of whether he formed those opinions before litigation. Fed. R. Evid. 701(c); see also Musser, 356 F.3d at 751 n.2.

Case law helps illustrate this distinction. In United States v. STABL, Inc., the court permitted an EPA compliance officer to testify as a lay witness because he simply compiled and tabulated business records. The Eighth Circuit noted that his testimony primarily related to his industry experience and offered background information regarding the alleged violations at issue and held that "mere tabulation does not require scientific, technical, or other specialized knowledge." STABL, 800 F.3d at 487. By contrast, in Browne v. P.A.M. Transport, Inc., 434 F.Supp.3d 712, 718 (W.D. Ark. 2020), the court held that testimony based on applying "methods" to "data" constituted expert testimony because the witness performed a specialized audit and drew conclusions that required technical

7

judgment. That analytical step, moving from raw information to evaluative conclusions grounded in specialized principles, marked the difference between lay and expert testimony. *Id.* Courts also recognize "hybrid" witnesses who testify as both a fact witness and an expert witness under Fed. R. Civ. P. 26. However, those witnesses must still comply with the disclosure requirements under Fed. R. Civ. P. 26(a)(2)(B) or (C) or risk exclusion of the expert testimony. *See, e.g., Florek v. Creighton University,* 2024 WL 4838927 (D. Neb. Nov. 20, 2024) (*citing Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.,* 31 F.4th 238, 253-54 (4th Cir. 2022)). Rule 26 thus enforces the substantive boundary established between Rule 701 and 702.

Applying those principles here, the court finds that substantial portions of Dr. Holland's Declaration rely on specialized knowledge rather than lay perception. Those opinions fall within Rule 702. In particular, Dr. Holland states:

> Under my direction as Chief Medical Officer we developed a set of standard work restrictions for health conditions that posed an unacceptable risk for sudden incapacitation, since we concluded the general types of safety risks in the railroad environment would be similar regardless of the specific health condition. For these sudden incapacitation work restrictions we used functional work restrictions which covered general categories of work activities relevant to safety critical jobs in the railroad environment (e.g., not to operate vehicles, on-track or mobile equipment, or hazardous equipment; not to work at unprotected heights; and not to do decision-making tasks that affect the immediate safety of others).

(Filing No. 77-13, at para. 30). He goes on to discuss how Union Pacific adapted the FMCSA medical standards to fit Union Pacific policy regarding seizures based upon his guidance and review. (Filing No. 77-13, at para. 31).

The same reasoning applies to other portions of Dr. Holland's Declaration. (Filing No. 77-13). Paragraph 15 sets forth his definition of "sudden incapacitation" and explains how he incorporated that medical concept into Union Pacific's FFD framework. That definition reflects a clinical risk assessment, not a lay observation. Paragraphs 18 and 19 describe Union Pacific's adoption of FMCSA seizure-risk guidelines and explains the medical rationale for doing so, including consultation with additional medical experts.

Paragraphs 21 through 24 describe Union Pacific's adoption of FMCSA seizure-risk guidance, explain the medical rationale underlying that guidance, discuss risk percentages associated with stroke and seizure, and articulate how those medical risks justified specific employment restrictions. In doing so, Dr. Holland interprets medical literature, explains neurological terminology, evaluates seizure probabilities, and connects those probabilities to safety-sensitive railroad employment. That movement from raw medical information to evaluative conclusions grounded in professional medical expertise constitutes expert analysis. Paragraph 27 similarly goes beyond recounting policy history and applies medical risk principles to justify the FFD determinations at issue. It reflects professional medical reasoning rather than mere description of corporate actions. Finally, Paragraphs 30 and 31 articulate medical conclusions regarding stroke-related seizure risk and its implications for workplace safety. These opinions rely upon specialized neurological knowledge and risk assessment methodologies that fall squarely within Rule 702. In each instance, Dr. Holland moves beyond merely describing what the company did. He explains why certain medical risks justify specific restrictions. That explanation necessarily depends on specialized knowledge and professional medical judgment.

These statements do not merely recount what the FMCSA Handbook says. Dr. Holland interprets medical terminology and then translates associated risks into safety implications and connects that risk to FFD determinations for safety-sensitive railroad employees. He explains why particular medical risks warranted particular restrictions. That explanation depends upon specialized medical knowledge and clinical judgment. In other words, he is not merely summarizing data. He is applying his medical expertise to workplace safety policy. Like in *Browne*, this movement from simply repeating medical data and historical fact information to drawing evaluative conclusions requiring professional medical judgment qualifies this opinion as expert analysis.

By contrast, Paragraphs 1 through 14, 16, 17, 20, 25, 26, 28, and 29 primarily recount Dr. Holland's role within Union Pacific, his participation in policy development, regulatory history, and factual summaries of prior railroad accidents, NTSB findings, and

9

FMCSA Handbook updates within his personal knowledge. In those sections, he generally describes events, meetings, policy changes, and agency determinations within his personal knowledge. He did not interpret medical science or provide additional clinical analysis. This testimony resembles the permissible industry background and narrative testimony approved in *STABL*. It provides context to the fact finder without invoking specialized methodology. Rule 701 allows that kind of testimony because it derives firsthand experience and does not rely on scientific or specialized reasoning. And relevant to the issue of timing, that potential testimony and Dr. Holland's role as a fact witness was timely made through Rule 26 initial disclosures. His expert opinions, however, were not.

Dr. Holland's Declaration clearly contains both factual narrative and medical analysis, which qualifies him as a "hybrid witness." The court concludes that his recounting of historical events and personal involvement in company decisions constitutes proper lay testimony. However, his interpretation of medical literature, definition of clinical risk concepts, evaluation of stroke and seizure probabilities, and application of those evaluations to safety-sensitive employment decisions constitute expert opinion. Accordingly, the court finds that the opinions found in Paragraphs 15, 18-19, 21-24, 27, 30, and 31 of Dr. Holland's Declaration contain expert testimony and were therefore subject to expert disclosure requirements under Rule 26.

## 2. Rule 37(c) Sanctions

Because the Defendant failed to disclose Dr. Holland as an expert, it is subject to sanctions under Fed. R. Civ. P. 37(c). Plaintiff asks the court to exclude Dr. Holland's entire testimony. The court recognizes, however, that "the exclusion of evidence is a harsh penalty and should be used sparingly." *Gruttemeyer*, 31 F.4th at 645. As noted above, Rule 37(c)(1) mandates exclusion of untimely disclosed evidence unless the failure is substantially justified or harmless. To assess this, the Eighth Circuit directs trial courts to evaluate four factors: "The reason for noncompliance; the surprise and prejudice to the opposing party; the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527

F.3d at 692 (*citing Sellers,* 350 F.3d at 711). After considering these factors, the court balances them against the severity of the requested sanction to reach a fair result. *Doe v. Young*, 664 F.3d 727, 734 (8th Cir. 2011).

### i. Reasons For Non-Compliance

The first factor, the reason for noncompliance, strongly favors Plaintiff. Defendant offers no justification for its failure to disclose Dr. Holland as an expert. Instead, Defendant asserts that it believed Dr. Holland qualified as a fact witness and that it properly disclosed him in that capacity. The court has already addressed and rejected that argument. Moreover, "counsel's misinterpretation of the rule's requirements does not substantially justify [Defendant's] failure to comply." *Anderson v. Bristol, Inc*., 936 F. Supp. 2d 1039, 1061 (S.D. Iowa 2013). Defendant cannot rely on misunderstanding to excuse noncompliance, particularly where the record demonstrates that it understood its disclosure obligations.

The court notes that Defendant has repeatedly identified Dr. Holland as an expert witness in prior litigation. *See, e.g., Harrison v. Union Pacific*, 2019 WL 418418 (D. Neb. Feb. 1, 2019), *Hopman v. Union Pacific*, 2020 WL 12654460 (E.D. Ark. Sept. 9, 2020). This history undermines any claim that Defendant misunderstood its disclosure obligations. Further, in cases where Defendant designated Dr. Holland as a fact witness under similar circumstances, the court routinely held that portions of his testimony constituted expert opinions requiring disclosure. For example, in *Christensen v. Union Pacific Railroad Co.*, 2025 WL 1192408 (D. Neb. Apr. 24, 2025), Union Pacific listed Dr. Holland as a fact witness in its initial disclosures. Dr. Holland provided expert opinions during his deposition, which plaintiff then sought to exclude due to the lack of expert disclosure. The court agreed that his opinions qualified as expert testimony, subject to Rule 26(a). Although the court denied the motion without prejudice due to insufficient information on the record, it expressly permitted reassertion if Union Pacific later sought to present expert testimony from Dr. Holland "on a motion, at a hearing, or at a trial." *Id.*; *see also Hurd v. Union Pacific Railroad Co.*, 2025 WL 713516 (D. Neb. March 4, 2025) (Dr. Holland qualified as a hybrid witness requiring expert disclosures under Fed.R.Civ.P.

26(a)(2)(C)); *Johnson v. Union Pacific Railroad Co.*, 2025 WL 833235 (D. Neb. March 17, 2025) (same). Taken together, the record shows that Defendant lacks substantial justification for its noncompliance. This factor supports the imposition of sanctions.

### ii. Surprise and Prejudice

The second factor weighs in favor of Defendant, although only slightly. While the timing of the disclosure was improper, Plaintiff deposed Dr. Holland with the knowledge of his challenged opinions and does not contend that additional discovery is necessary to address them. The prejudice is therefore limited. Defendant also identified Dr. Holland in its initial disclosures and indicated that he would testify regarding Union Pacific's FFD policies. Plaintiff further acknowledged in his complaint that Defendant relied on FMCSA guidelines in crafting those policies. (Filing No. 1, at para. 27). Again, Dr. Holland is certainly no stranger to the parties here, as he frequently appears as an expert witness for Union Pacific in similar litigation.

Nevertheless, these circumstances do not relieve Defendant of its obligation to comply with Rule 26 in this case. As the Eighth Circuit cautioned, "[t]he expert witness disclosure requirements would be rendered meaningless if a party could ignore them and then claim that the nondisclosure was harmless because the other party should have read between the lines. Moreover, parties ... are entitled to presume that opposing parties will comply with the Rules of Civil Procedure and that experts will be properly disclosed in accordance with the rules." *Vanderberg, 906 F.3d at 704*. Although Plaintiff likely anticipated the substance of Dr. Holland's testimony, Defendant knew from prior rulings that courts classify portions of his testimony as expert opinion requiring disclosure. Despite that knowledge, Defendant chose not to disclose him as an expert here. *See Hurd*, 2025 WL 713516; *Johnson*, 2025 WL 833235. The court agrees that Plaintiff should not have to speculate whether Dr. Holland will offer expert opinions at trial. The rules require clarity, not guesswork.

### iii. Extent and Importance

As to the remaining two factors (i.e., the extent to which allowing the information may disrupt the order and efficiency of trial and the importance of the testimony), the court finds these weigh in favor of a tailored exclusion. Trial is scheduled for June 8, 2026, and a dispositive motion has been filed and remains pending. While Defendant offered Plaintiff another opportunity to depose Dr. Holland based on his declaration, Plaintiff chose not to do so. Allowing properly limited testimony will not disrupt the orderly progression of trial. It does not appear that either party has an interest in reopening discovery or prolonging this matter further. This factor therefore weighs against the most severe sanction.

The importance of the testimony, however, cuts both ways. Dr. Holland drafted, approved, and enforced the FFD policy at issue. Plaintiff's claim centers on Defendant's enforcement of that policy and the resulting loss of his employment. (*See* Filing No. 1). It is clear that Defendant intends to rely on Dr. Holland's testimony regarding "Union Pacific's FFD policies and procedures, including the basis for implementing those policies and procedures." (Filing No. 90, at p. 1). At the same time, it was Dr. Hughes who made Plaintiff's initial FFD determination, not Dr. Holland. Dr. Holland played no role in Plaintif's case. In addition, Union Pacific has other evidence and witnesses to support these important facts. In particular, Union Pacific retained and properly disclosed Dr. T. Scott Diesing as an expert who will testify regarding Plaintiff's medical condition, ability to return to work, and other related FFD issues. (Filing No. 77-3). Because alternative sources of testimony exist to address the creation, justification, and application of the FFD policies, excluding Dr. Holland's expert opinions will not deprive Defendant of the ability to present its defense.

### 3. Appropriate Sanctions

After weighing these factors carefully, the court declines to exclude Dr. Holland's testimony in its entirety. Defendant properly disclosed him as a fact witness, and complete exclusion would be disproportionate. However, Rule 37(c)(1) requires meaningful

13

consequences when disclosure obligations are ignored. The court will therefore limit Dr. Holland's testimony to factual matters within his personal knowledge. He may testify regarding factual historical events that motivated changes in Union Pacific's policies and his participation in drafting and finalizing those policies, which are provided in Paragraphs 1-14, 16-17, and 21-23 of his Amended Declaration. (Filing No. 77-4). The court will exclude, however, any opinions that rely on specialized medical knowledge that should have been disclosed under Rule 26(a)(2)(C). Dr. Holland may not offer testimony that interprets medical literature, quantifies seizure or stroke risk, explains clinical predictors of future seizures, or otherwise applies medical expertise to justify the FFD restrictions imposed on Plaintiff, including those provided in Paragraphs 15, 18-20, and 24-26 of his Declaration. This limitation both enforces Rule 26 and protects Plaintiff from unfair surprise, while preserving the orderly progression of trial.

### B. <u>Motion to Strike</u>

Plaintiff also moves to strike Dr. Holland's Amended Declaration from Defendant's summary judgment filings. (Filing No. 91, Filing 81-2). Following the parties' conferral regarding Plaintiff's objections to Dr. Holland's disclosure, Defendant submitted a revised Amended Declaration, again claiming it only contained Dr. Holland's factual testimony. Plaintiff contends that, like the original declaration, the amended version contains expert opinions, was untimely disclosed and should therefore also be excluded. The court finds that this motion should be granted in part and denied in part, for many of the same reasons already noted.

Again, Rule 37(c)(1) prohibits a party from using information or witnesses that were not disclosed in accordance with Rule 26(a) or (e), unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). Additionally, under Rule 56(c)(2), a party may object to evidence presented in support of or in opposition to summary judgment if the evidence is not in an admissible form. The advisory committee notes to that rule clarify that a separate motion to strike is generally unnecessary to preserve objections to

inadmissible evidence, as objections may be raised directly in the summary judgment briefing. Fed. R. Civ. P. 56(c)(2) (advisory committee's note to 2010 amendment).

The procedural posture of this case makes the circumstances here a bit unique. Defendant's pending summary judgment motion (Filing No. 78) is now fully briefed. That matter has not been referred to the undersigned and is currently pending with United States District Judge Brian C. Buescher. Because there was not yet a ruling on Plaintiff's Motion to Strike, however, it appears Plaintiff responded to the factual allegations derived from Dr. Holland's Amended Declaration in the event the court considers them as part of Defendant's summary judgment motion and to preserve any objection. (Filing No. 96, at p. 4). While a separate motion to strike is usually unnecessary and duplicative, the court finds that in this instance, it should be addressed separately to avoid confusion. The undersigned has already determined that portions of Defendant's disclosure of Dr. Holland's original Declaration were untimely under Rule 26. The Amended Declaration submitted in support of Defendant's summary judgment motion largely repeats the same opinions as the original Declaration, although certain opinions were revised or removed.[4]

The court agrees with Plaintiff that Defendant should not be permitted to rely upon evidence in support of summary judgment that has now been excluded. In that vein, the undersigned has reviewed the Defendant's Statement of Material Facts (Filing No. 79, Filing No. 104), Plaintiff's Response (Filing No. 96), and the supporting brief(s). It appears Defendant does reference some the now-excluded expert opinions or testimony of Dr. Holland in its Statements of Fact 45, 46, 47 and 54, although not in any substantive way for purposes of its summary judgment analysis. In particular, those references include Dr. Holland's definition of incapacitation (Filing No. 81-2, at para. 15) and his rationale for adopting the FMCSA seizure-risk guidelines. (Filing No. 81-2, at para. 18-19). (*See for example* Filing No. 80, at p. 14). The court finds those opinions should be stricken and recommends to Judge Buescher that they not be considered for purposes of summary

---

[4] Paragraphs 15, 18, 19, 20, and 24–26 of the Amended Declaration mirror Paragraphs 15, 18, 19, 21, 22, 24, and 30–31 of the original Declaration that the court has now excluded.

judgment. As for the remaining expert opinions (Paragraphs 20, 24-26 in the Amended Declaration), it does not appear Defendant relies on those in summary judgment. Plaintiff's Motion to Strike is accordingly granted to the extent Defendant relies on the excluded expert opinions noted above, but is denied in all other respects, including as to Dr. Holland's factual testimony properly disclosed and still permitted as noted herein (i.e., Paragraphs 1-14, 16-17, and 21-23 of the Amended Declaration).

Accordingly, IT IS NOW ORDERED:

1. Plaintiff's Motion to Exclude Dr. Holland (Filing No. 75) is granted in part and denied in part as set forth herein.
2. Plaintiff's Motion to Strike Declaration of Dr. Holland (Filing No. 91), is granted in part and denied in part as set forth herein.

Dated this 25th day of February, 2026.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge

16